**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASCENCION MOLINA, | CASE NO. CV F 10-0813 LJO GSA |
| Plaintiff, | **ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 8.) |
| CITY OF MADERA, et al., | |
| Defendants. / | |

**INTRODUCTION**

Defendants City of Madera ("City"), its police department and one of its police officers (collectively "defendants") seek to dismiss plaintiff Ascencion Molina's ("Mr. Molina's") state tort claims as time barred and his federal unlawful arrest and excessive force claims as lacking sufficient facts. Mr. Molina filed no timely papers to oppose dismissal of the claims. This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the August 31, 2010 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES in part Mr. Molina's claims.

1

# BACKGROUND[1]

## Mr. Molina's Arrest

On April 2, 2009,[2] defendant City police officer Anaya ("Officer Anaya") was dispatched to a market in the City where he approached Mr. Molina standing outside the market. Mr. Molina declined Officer Anaya's request for Mr. Molina's name. Officer Anaya instructed Mr. Molina to sit on a nearby bench.

Mr. Molina declined to sit on the bench and told Officer Anaya that Mr. Molina did not have to and did not wish to speak with Officer Anaya. At this time, Mr. Molina's wife was arrested inside the market for alleged shoplifting. Mr. Molina again declined Officer Anaya's request for Mr. Molina's name.

Officer Anaya attempted to search Mr. Molina and ordered Mr. Molina to place his hands behind Mr. Molina's back as Officer Anaya grabbed Mr. Molina's left arm to attempt to physically control Mr. Molina. Unable to physically control Mr. Molina, Officer Anaya stepped back and drew and fired his taser at Mr. Molina, who was struck and fell to the ground. When Mr. Molina failed to comply with Officer Anaya's order to place Mr. Molina's hands behind his back, Officer Anaya tased Mr. Molina again.

Officer Anaya handcuffed and searched Mr. Molina and had Mr. Molina transported to the Madera County Jail.

## Mr. Molina's Government Claim

Pursuant to the California Government Claims Act ("Claims Act"), Cal. Gov. Code, §§ 810, et seq., Mr. Molina, through his attorney, on June 11, 2009 submitted a claim form to the City. On July 16, 2009, the City mailed Mr. Molina's attorney its Notice of Action on Claim ("notice") to reject/deny the claim. The notice stated that "you have six (6) months from the date this Notice of Rejection of

---

[1] The factual recitation is derived generally from matters of public record and Mr. Molina's Judicial Council of California form complaint ("complaint"), the target of defendants' challenges. Defendants' papers embellish the complaint's factual allegations. Given F.R.Civ.P. 12(b)(6) motion standards, this Court rejects such embellishment and admonishes defense counsel to limit discussion to matters which this Court may properly address on a F.R.Civ.P. 12(b)(6) motion.

[2] The complaint alleges the incident was on April 2, 2008. However, the record reflects that the incident was on April 2, 2009.

2

1  Claim was personally delivered or deposited in the mail to file a court action on this Claim (Government
2  Code Section 945.6)."

### Mr. Molina's Court Action Claims

On January 22, 2010, Mr. Molina filed his complaint in Madera County Superior Court to allege California tort claims of negligence, battery, assault, false arrest and intentional infliction of emotional distress (collectively "state tort claims"). The complaint further alleges 42 U.S.C. § 1983 ("section 1983") claims for unlawful arrest and search, excessive force and *Monell* liability (collectively the "section 1983 claims").

### DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Defendants seek to dismiss the state tort claims as barred for failure to file a court action within six months of the notice. Defendants seek to dismiss the section 1983 claims as lacking sufficient facts.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel.*

3

*Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in

> a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are

based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[3]  A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).  Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action."  *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).  A court properly may take judicial notice of matters of public record outside the pleadings'" and consider them for purposes of the motion to dismiss.  *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

With these standards in mind, this Court turns to defendants' challenges to the complaint's claims.

**Claims Act Compliance – Timely Court Action**

Defendants argue that Mr. Molina's court action filed on January 22, 2010 is more than six motions after the July 16, 2009 notice to render the state tort claims time barred.

The Claims Act describes the specific steps which must be taken before a civil action for money or damages may be brought against a public entity. *Addison v. State of California*, 21 Cal.3d 313, 316, 146 Cal.Rptr. 224 (1978).  The Claims Act requires timely filing of a proper claim as condition precedent to maintenance of an action.  Cal. Gov. Code, §§ 905, 911.2, 945.4 (presentment of a written claim to the applicable public entity is required before a "suit for money or damages may be brought against a public entity"); *County of San Luis Obispo v. Ranchita Cattle Co.*, 16 Cal.App.3d 383, 390, 94 Cal.Rptr. 73 (1971). California Government Code section 911.2(a) provides: "A claim relating to a cause of action for death or for injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action.  A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action."

Government Code section 945.6(a)(1) requires a claimant to file a civil action within six months

---

[3] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

6

after the public agency issues its decision. *Javor v. Taggart*, 98 Cal.App.4th 795, 804, 120 Cal.Rptr.2d 174 (2002). "The plain meaning of section 945.6, subdivision (a)(1), is that the statute of limitations therein begins to run when the written rejection notice is deposited in the mail to the claimant, or is personally delivered, but not when it is delivered by the postal employee after having been deposited in the mail pursuant to section 913." *Edgington v. County of San Diego*, 118 Cal.App.3d 39, 46, 173 Cal.Rptr. 225 (1981).

The claims procedures applicable to actions against public employees are the same for actions against public entities. Cal. Gov. Code, §§ 950-950.6. Compliance with the claims statutes is mandatory. *Farrell v. County of Placer*, 23 Cal.2d 624, 630, 145 P.2d 570 (1944). Failure to file a claim is fatal to the cause of action. *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183, 10 Cal.Rptr. 409 (1961). "[F]ailure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." *State v. Superior Court,* 32 Cal.4th 1234, 13 Cal.Rptr.3d 534, 538 (2004).

Based on the City's July 16, 2009 mailing of the notice, Mr. Molina had up to January 16, 2010 to file a court action. His delay to January 22, 2010 is untimely to bar the state tort claims.

### Section 1983 Requirements

The complaint alleges against Officer Anaya section 1983 claims for:

1. Unlawful arrest – "Anaya intentionally arrested plaintiff without plaintiff's consent and without a warrant or probable cause";
2. Excessive force – "Anaya violated his civil rights by using excessive force in arresting or detaining plaintiff"; and
3. Unlawful search – "Anaya carried out an unreasonable search of plaintiff without a warrant."

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for

vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 811. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

**Qualified Immunity**

Defendants contend that Officer Anaya is entitled to qualified immunity to bar the section 1983 claims against him.

*Purpose And Elements*

Qualified immunity is a defense to claims against governmental officials "arising out of the performance of their duties. Its purpose is to permit such officials conscientiously to undertake their responsibilities without fear that they will be held liable in damages for actions that appear reasonable at the time, but are later held to violate statutory or constitutional rights." *Kraus v. Pierce County*, 793 F.2d 1105, 1108 (9th Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571 (1987). Qualified immunity protects section 1983 defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004). The "heart of qualified immunity is that it spares the defendant from having to go forward with an inquiry into the merits of the case. Instead, the threshold inquiry is whether, assuming that what the plaintiff asserts the facts to be is true, any allegedly violated right was clearly established." *Kelley v. Borg*, 60 F.3d 664, 666 (9th Cir. 1995).

"Qualified immunity balances two important interests – the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 815 (2009). The protection of qualified immunity applies regardless of whether the government actor's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284 (2004) (Kennedy, J., dissenting) (citing *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806. Courts stress "the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534 (1991). "Immunity ordinarily should be decided by the court long before trial." *Hunter*, 502 U.S. at 228, 112 S.Ct. at 537.

The issue of qualified immunity is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514, 114 S.Ct. 1019 (1994); *Romero v. Kitsap County*, 931 F.2d 624, 627-628 (9th Cir. 1991). To analyze qualified immunity, a court determines: (1) what right has been violated; (2) whether that right was so "clearly established" at the time of the incident that a reasonable officer would have been aware of its constitutionality; and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998), *cert. denied*, 525 U.S. 1016, 119 S.Ct. 540 (1988). In *Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006), the Ninth Circuit Court of Appeals explained in greater detail:

> Determining whether an official is entitled to summary judgment based on the affirmative defense of qualified immunity requires applying a three-part test. First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right?" If the answer is no, the officer is entitled to qualified immunity. If the answer is yes, the court must proceed to the next question: whether the right was clearly established at the time the officer acted. That is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." If the answer is no, the officer is entitled to qualified immunity. If the answer is yes, the court must answer the final question: whether the officer could have believed, "reasonably but mistakenly ... that his or her conduct did not violate a clearly established constitutional right." If the answer is

9

yes, the officer is entitled to qualified immunity. If the answer is no, he is not. (Footnotes omitted.)

"The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, __ U.S. __, 129 S.Ct. at 818. In discussing *Pearson*, the Ninth Circuit Court of Appeals recently explained that "lower courts are no longer required to consider whether a constitutional violation occurred before considering whether the right in question was 'clearly established.'" *Moss v. U.S. Secret Service*, 572 F.3d 962, 968, n. 5 (9th Cir. 2009).

### *Clearly Established Right*

Defendants argue that Officer Anaya violated no constitutional right to end the analysis at the first step.

The "contours" of the allegedly violated right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039 (1987). The alleged violated right "must have been 'clearly established' in a more particularized, and hence more relevant sense." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. "Determinations of whether a right is clearly established must be 'undertaken in light of the specific context of the case, not as a broad general proposition.'" *Skoog*, 469 F.3d at 1230-1231 (quoting *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151). Plaintiffs are unable to establish a clearly established right "by alleging violation of extremely abstract rights." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3039. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . .; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039.

"To determine that the law was clearly established, we need not look to a case with identical or even 'materially similar' facts." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003), *cert. denied*, 543 U.S. 825, 125 S.Ct. 43 (2004). "Rather, the 'standard is one of fair warning: where the contours of the right have been defined with sufficient specificity that a state official had fair warning that [his]

conduct deprived a victim of his rights, [he] is not entitled to qualified immunity.'" *Serrano*, 345 F.3d at 1077 (quoting *Haugen v. Brosseau*, 339 F.3d 857, 873 (9th Cir. 2003)). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508 (2002).

A plaintiff "bears the initial burden of proving that the rights allegedly violated by [defendants] were clearly established at the time of the alleged misconduct." *Houhgton v. South*, 965 F.2d 1532, 1534 (9th Cir. 1992) (citing *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 3020 (1984); *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir.1989)).

Unlawful Search And Arrest

Defendants argue that Officer Anaya did not arrest Mr. Molina without probable cause to violate his constitutional rights.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *U.S. v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002). A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

The facts of a detention must be viewed in the context of the totality of circumstances in that "the scope of the intrusion permitted [by the Fourth Amendment] will vary to some extent with the particular facts and circumstances of each case." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319 (plurality opinion); *see Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002). A court looks at the situation as a whole and does not isolate each fact "in a vacuum." *Allen v. City of Los Angeles*, 66 F.3d 1052, 1057 (9th Cir. 1995); *see Gallegos*, 308 F.3d at 991.

"The 'reasonableness' and hence constitutionality of a warrantless arrest is determined by the existence of probable cause." *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990). The "question of whether a reasonable officer could have believed probable cause (or reasonable suspicion) existed to justify a search or an arrest is 'an essentially legal question' that should be determined by the district court at the earliest possible point in the litigation." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985)).

1    The "crucial inquiry" is whether there was "probable cause to make the arrest." *Barry*, 902 at 772; *see McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir. 1984). Whether an arrest is "constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it – whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223 (1964). "Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe 'that the suspect has committed, is committing, or is about to commit an offense.'" *Barry*, 902 F.2d at 773 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632 (1979)).

The right to search and seize without a search warrant extends to things under the accused's immediate control, *Carroll v. United States*, 267 U.S. 132, 158, 45 S.Ct. 280, 287 (1925) and, to an extent depending on the circumstances of the case, to the place where he is arrested, *Marron v. United States*, 275 U.S. 192, 199, 48 S.Ct. 74, 77 (1927); *Agnello v. United States*, 269 U.S. 20, 30, 46 S.Ct. 4, 5 (1925).

The gist of the complaint is that Mr. Molina was subjected to unlawful warrantless arrest and search. Relying on information outside the complaint and beyond the scope of F.R.Civ.P. 12(b)(6) consideration, defendants appear to claim Officer Anaya was justified to arrest and search Mr. Molina. Defendants describe Mr. Molina as "combative," "confrontational and irritated." The complaint is silent on his demeanor. Defendants offer that Mr. Molina was arrested for violation of California Penal Code section 148(a) (resisting, delaying or obstructing an officer). The complaint makes no mention of Mr. Molina's arrest, and defendants offer nothing of which this Court may take judicial notice to confirm the arrest.

The complaint alleges no more than that Mr. Molina declined Officer Anaya's directives to sit on a bench and to identify himself to provoke Officer Anaya's attempted search and ensuing tasing of Mr. Molina. This Court is unable to conclude based on the complaint's limited facts and defendants' claims that Officer Anaya is entitled to qualified immunity as to unlawful search and arrest claims. Contrary to defendants' claim, the complaint does not solidify that Officer Anaya committed no

1  constitutional wrong.

## Excessive Force

Defendants claim that since the complaint alleges Officer Anaya was unable to control Mr. Molina, use of the taser was reasonable.

In *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989), the United States Supreme Court determined that section 1983 excessive force claims are addressed under the Fourth Amendment's reasonableness standard:

> [A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

Excessive force is that which "was not 'objectively reasonable' in light of the facts and circumstances confronting the officer." *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002). In *Graham*, 490 U.S. at 396-397, 109 S.Ct. 1865, the United States Supreme Court provided guidance on reasonableness of use of force:

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. . . .
>
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. (Citations omitted.)

To justify Officer Anaya's taser use, defendants again characterize Mr. Molina as "confrontational." Although the "facts" may establish that Mr. Molina was confrontational, the complaint alleges only that Officer Anaya was unable to control Mr. Molina by grabbing Mr. Molina's

1  left arm and escalated his force to the taser.  Without more, this Court is unable to conclude that Officer
2  Anaya's use of force was reasonable to cloak him with qualified immunity.
3       The section 1983 claims against Officer Anaya are not subject to dismissal.

### ***Monell* Policy Or Custom**

4
5       The complaint's *Monell* claim alleges that the City and its police department "have a custom and
6  practice to fail to properly train its offices [sic] on usual and recurring situations, proper use of force, and
7  the use of tasers."  The claim further alleges the "training program was not adequate to train its officers
8  to properly handle usual and recurring situations."

9       A local government unit may not be held liable for the acts of its employees under a respondeat
10  superior theory.  *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018
11  (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct.
12  275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989).  "Federal case law
13  has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. §
14  1983."  *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996).
15  Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the
16  result of a 'policy or custom' of that state actor."  *African American Contractors*, 96 F.3d at 1215.

17       "[A] municipality cannot be held liable *solely* because it employs a tortfeasor."  *Monell*, 436 U.S.
18  at 691, 98 S.Ct. at 2018.  The local government unit "itself must cause the constitutional deprivation."
19  *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345
20  (1993).  Because liability of a local governmental unit must rest on its actions, not the actions of its
21  employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged
22  constitutional violation was the product of a policy or custom of the local governmental unit.  *City of*
23  *Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475
24  U.S. 469, 478-480, 106 S.Ct. 1292 (1986).  To maintain a civil rights claim against a local government,
25  a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal
26  policymakers) and the requisite causation (the policy or custom as the "moving force" behind the
27  constitutional deprivation).  *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296
28  F.3d 531, 537 (7th Cir. 2002); *see Rogan v. City of Los Angeles*, 668 F.Supp. 1384, 1387 (C.D. Cal.

1987) (to state a section 1983 claim against a municipality, "a plaintiff must show that: (1) he has suffered a deprivation of a constitutionally protected interest; and (2) said deprivation was caused by an official policy, custom or usage of the municipality").

An actionable policy or custom is demonstrated by:

1. An "express policy that, when enforced, causes a constitutional deprivation," *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994);

2. A "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988) (plurality opinion); or

3. Constitutional injury caused by a person with "final policymaking authority," *Praprotnik*, 485 U.S. at 123, 108 S.Ct. 915.

"The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police. Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). "[E]xistence of a policy, without more, is insufficient to trigger local government liability." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). However, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. 469, 480, 106 S.Ct. 1292 (1986).

"More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292. Local government liability is based on "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *McMillan v. Monroe County, Ala.*, 520 U.S. 781, 785, 117 S.Ct. 1734 (1997).

To impose *Monell* liability, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy. Plaintiff must, of course, prove that his injury was caused by city policy." *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984). Moreover, the "allegation of a single incident of unconstitutional conduct by a municipal employee usually does not establish a sufficient basis for suing the municipality" in that "to

sue a municipality for the isolated constitutional wrong of one of its employees amounts to invocation of the theory of respondeat superior, which was firmly rejected by the Supreme Court in *Monell*." *Powe v. City of Chicago*, 664 F.2d 639, 650-651 (7th Cir. 1981).

The *Monell* claim rests on an alleged policy to improperly train officers. The complaint makes no attempt to explain or describe such policy or custom much less link or connect such policy to alleged constitutional deprivation. The complaint points to no conduct of a particular City official or employee to substantiate failure to properly train or an inadequate training program. The complaint fails to allege how a constitutional violation was a product of the cryptically described policy. The complaint fails to connect the City to a constitutional deprivation caused by the City or its official or employee. In the absence of supporting facts, the *Monell* claim is subject to dismissal.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice the state tort claims against all defendants;
2. DENIES dismissal of the section 1983 claims against Officer Anaya;
3. DISMISSES with leave to amend the *Monell* claim;
3. ORDERS Mr. Molina, no later than September 15, 2010, to file and serve either: (a) a first amended complaint to drop the state tort claims and to amend the *Monell* claim; or (b) a statement that Mr. Molina elects to pursue only the section 1983 claims against Officer Anaya; and
4. ORDERS defendants, no later than 20 calendar days after Mr. Molina files and serves his first amended complaint or statement, to file and serve an answer to the complaint or a response to the first amended complaint, as applicable.

IT IS SO ORDERED.

Dated:   **August 24, 2010**                    /s/ Lawrence J. O'Neill
                                                 UNITED STATES DISTRICT JUDGE